**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

PERFORMANCE SOLUTIONS
LLC, 321 HOLDINGS, and HALCYON
BRAND SERVICES INC.                                    CIVIL ACTION

VERSUS                                                   20-797-SDD-RLB

SEA TIES, LLC

**RULING**

This matter is before the Court on the *Motion for Stay*[1] filed by Defendant, Sea

Ties, LLC ("Sea Ties"). Plaintiffs Performance Solutions, LLC ("Performance"); 321

Holdings; and Halcyon Brand Services ("Halcyon") (collectively "Plaintiffs") filed an

*Opposition.*[2] Sea Ties also filed a *Supplemental Memorandum*[3] to which Plaintiffs filed a

*Response.*[4] For the following reasons, Sea Ties' *Motion* shall be denied.

**I.    BACKGROUND**

**A.  Facts**

This dispute arises from alleged patent infringement and includes allegations of

false advertising, unfair trade practices, and tortious interference as well. Performance

owns patents for foam massage rollers and licenses use of those patents to 321 Holdings

and Halcyon, as well as other companies.[5] These companies together manufacture the

---

[1] Rec. Doc. No. 36.
[2] Rec. Doc. Nos. 41, 49.
[3] Rec. Doc. No. 55.
[4] Rec. Doc. No. 58.
[5] Rec. Doc. No. 1, p. 2.

brand of foam rollers 321 Strong.[6]

Sea Ties is purportedly owned by Ron Johnson ("Johnson") and his company Ron Johnson Engineering, Inc. ("RJEI") (collectively "the Sea Ties Parties").[7] Neither Johnson nor RJEI are named in this suit, but they are named in a parallel suit in the District of Hawaii.[8]

The parties have a longstanding dispute that has only recently erupted into litigation. Sea Ties manufactures competing foam rollers. Since 2017, Performance, through its owner Dye, has demanded that the Sea Ties Parties stop infringing on Performance's patented foam rollers and purchase a license to manufacture them.[9] Johnson has refused, stating that he does not believe his foam rollers infringe on Performance's patents.[10] Instead, the Sea Ties Parties have tacked a different course.

In January 2018, Red Points, allegedly an agent of Sea Ties, demanded of Amazon that Amazon remove all 321 Strong foam rollers from its website because they allegedly infringed on the Sea Ties Parties' patents.[11] Amazon initially complied, but put them back on its website a month later.[12] In April 2020, the Sea Ties Parties sent a cease-and-desist letter to Halcyon and 321 Holdings accusing them of infringing on a different patent than the one at issue in the Amazon episode.[13] Plaintiffs responded within the month, providing reasons for why they believed their foam rollers did not infringe on the

---

[6] *Id*. at 3.
[7] *Id*.
[8] *Id*.
[9] *Id*. at 4.
[10] *Id*.
[11] *Id*. at 5–6. There is a factual dispute as to who owns these patents. For the purposes of this *Ruling*, and consistent with Plaintiffs' allegations, the Court will assume that either Sea Ties owns the patents or the Sea Ties Parties' ownership of the patents can be attributed to Sea Ties.
[12] *Id*. at 6.
[13] *Id*.

Sea Ties Parties' patents.[14] Six months later, on October 28, 2020, the Sea Ties Parties responded to that letter and asserted that Plaintiffs' products infringe on a different claim of one of the Sea Ties Parties' patents.[15] This letter also demanded that Plaintiffs stop selling their products by November 20 and requested the discontinuation of all of Plaintiffs' foam rollers, not just the 321 Strong brand.[16]

### B.  Procedural History

Plaintiffs assert eleven causes of action in the present matter. Four are for patent infringement on Plaintiffs' patents. These causes of action are critical to the *Motion to Stay*. Two are for declaratory judgments that Plaintiffs do not infringe on the Sea Ties Parties' patents. The remaining five are causes of action for: (1) unfair competition and false advertising under the Lanham Act; (2) a violation of the LUTPA; (3) false advertising under Louisiana law; (4) tortious interference with contractual relations; and (5) tortious interference with a prospective business advantage. The Lanham Act, LUTPA, and Louisiana's false advertising law causes of action are based on Red Points' alleged statements to Amazon[17] as well as allegedly untruthful statements made on Sea Ties' website regarding Plaintiffs' products.[18] The tortious interference with a contract cause of action is based on the Sea Ties Parties' alleged damaging of the license contracts between Performance and Halcyon and Performance and 321 Holdings (as well as the now-dissolved 321 Strong, which was formerly a company as well as a brand name).[19]

---

[14] *Id*. at 7.
[15] *Id*.
[16] *Id*. at 8.
[17] Allegedly as Sea Ties' agent.
[18] *Id*. at 62–63.
[19] *Id*. at 66–68.

The tortious interference with a prospective business advantage cause of action is premised on the notion that the Sea Ties Parties' actions have interfered with Performance's efforts to license its patents to prospective licensees.[20]

Plaintiffs ask the Court to declare that Sea Ties has infringed on Plaintiffs' patents; that Plaintiffs have not infringed on Sea Ties' patents, and those patents are invalid; and that Sea Ties has, either individually or through its agents, violated the false advertising and unfair competition laws above and tortiously interfered with Plaintiffs' contracts and prospective business opportunities.[21] Plaintiffs request a variety of remedies, including treble damages and injunctive relief.[22] Sea Ties counters that Plaintiffs' patents are invalid.[23]

### C. The Basis for the *Motion to Stay*

Within ten days of Plaintiffs filing suit, RJEI filed *ex parte* reexamination requests with the United States Patent and Trademark Office ("the PTO"). *"[E]x parte* reexamination is a curative proceeding meant to correct or eliminate erroneously granted patents."[24] The PTO granted the requests as to all "claims" in all four of Plaintiffs' patents due to a substantial new question of patentability in view of a dozen or more prior art references identified in each of the requests.[25] Moy's Walker on Patents describes patent claims as follows:

> United States patent law requires the legally protected subject matter to be set out in a separate lingual schedule, or "claim," that forms a discrete part of the application and, later, the issued patent. Claims perform two basic

---

[20] *Id.* at 68–69.
[21] *Id.* at 69–71.
[22] *Id.*
[23] Rec. Doc. No. 22, p. 26–34.
[24] *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1338 (Fed. Cir. 2013).
[25] Rec. Doc. No. 36-1, p. 6–7.

purposes: they define the range of technological activities that the patent controls and whose unauthorized use will, as a result, give rise to liability for patent infringement; additionally, they provide notice to potentially affected persons throughout the patenting transaction.[26]

The "prior art" consideration informs the "obviousness" of the invention which precludes patentability. Moy's Walker on Patents describes "prior art" considerations as follows:

> Even though an invention is different from any one example of prior technology, it can still be technologically inadequate to be eligible for patenting. In particular, the patent law of the United States contains the additional requirement that the technological aspects of the invention substantially exceed those of the nearest prior technology. As a result, inventions whose differences over the prior technology are only small cannot be validly patented.
>
> This requirement is currently expressed in section 103 of the patent statute. The section states that an invention is not patentable if it would have been "obvious" over the "prior art" at the time the invention was made. Obviousness is to be judged from the objective perspective of "a person having ordinary skill in the art" to which the invention pertains.

In sum, the PTO is currently reviewing the validity of Plaintiffs' patents, which are the basis of four out of their eleven causes of action. Therefore, Sea Ties argues that the Court should stay the proceedings until the PTO finishes its reexamination of Plaintiffs' patents.

The United States Court of Appeals for the Federal Circuit has provided guidance in this area. In *Fresenius USA, Inc. v. Baxter Intern., Inc.*, the Federal Circuit held that "the reexamination statute restricts a patentee's ability to enforce the patent's original claims to those claims that survive reexamination in 'identical' form."[27] "[I]n general, when a claim is cancelled, the patentee loses any cause of action based on that claim, and any

---

[26] § 4:7. Generally, 1 Moy's Walker on Patents § 4:7 (4th ed).
[27] *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1339 (Fed. Cir. 2013).

pending litigation in which the claims are asserted becomes moot."[28] This is the case even if a court or jury has conclusively decided the validity of the patent.[29] The PTO uses a preponderance of the evidence standard of proof, rather than the clear and convincing evidence standard used by district courts.[30] *Fresenius* also noted that "the language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation," so there is no per se rule in favor of staying.[31]

## II.    LAW

A district court has the inherent power to stay its proceedings.  This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[32] This is best accomplished by the "exercise of judgment, which must weigh competing interests and maintain an even balance."[33]

Courts consider three factors when deciding whether to grant a stay pending reexamination of a patent: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set.[34]

---

[28] *Id*. at 1340.
[29] *Id*.
[30] *Dome Pat. L.P. v. Lee*, 799 F.3d 1372 (Fed. Cir. 2015).
[31] *Fresenius USA,* 721 F.3d at 1339.
[32] *Landis v. No. American Co.*, 299 U.S. 248, 254 (1936).
[33] *Id.* at 254–55.
[34] Rec. Doc. No. 36-1, p. 13; Rec. Doc. No. 49, p. 12; See *KIPB LLC v. Samsung Elecs*., No. 2:19-cv-00056, 2019 WL 6173365, at *1 (E.D. Tex. Nov. 20, 2019).

III.    ANALYSIS

A.  Undue Prejudice or Tactical Disadvantage

Sea Ties argues that it is seeks the stay to reduce the likelihood of undue prejudice.[35] Sea Ties also argues that the parties are not direct competitors, which reduces the risk of undue prejudice, because Performance merely licenses and litigates its patent rights and no longer produces foam rollers.[36] Sea Ties asserts that money damages, if necessary, would adequately compensate Plaintiffs if they are later successful.[37] Sea Ties argues that Plaintiffs' failure to bring these claims four years ago belies Plaintiffs' cries for urgency now.[38] Similarly, Sea Ties argues that Plaintiffs' failure to request a preliminary injunction indicates that Plaintiffs do not feel a sense of urgency, which suggests a lack of undue prejudice.[39] Finally, Sea Ties argues that a failure to stay this litigation will prejudice it because it will have to litigate claims that may turn out to be invalid after the PTO's decision.[40]

Plaintiff argues that the parties are, in fact, direct competitors, so Sea Ties' alleged continued infringement of Plaintiffs' patents continues to impact Plaintiffs' market share and cause Plaintiffs to lose money.[41] Plaintiffs cite authority for their position that undue prejudice will result if litigation between direct competitors is stayed.[42] Plaintiffs also argue that Sea Ties' false advertising and tortious interference, which are not part of the PTO

---

[35] Rec. Doc. No. 36-1, p. 15.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 16 (citing *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549JLR, 2013 WL 5530573, at *6 (W.D. Wash. Oct. 7, 2013) (collecting cases).

[40] *Id*.

[41] Rec. Doc. No. 49, p. 21 (citing *Eon Corp. IP Holdings, LLC v. Skytel Corp.*, No. 6:08-CV-385, 2009 WL 8590963, at *3 (E.D. Tex. Apr. 29, 2009)).

[42] *Id.*

review, will continue to harm them.[43] Plaintiffs assert that the loss of its market share is

an irreparable harm not compensable by money damages and that Sea Ties' supposed

flaunting of patent law encourages Performance's licensees to do the same and refuse

to pay royalties.[44] Plaintiffs argue that Halcyon is currently for sale, but prospective buyers

are wary of the litigation risk.[45] Plaintiffs also assert that the Sea Ties Parties' past actions,

especially the Amazon episode, demonstrate that they are willing to engage in bad faith

tactics to hurt Plaintiffs' businesses.[46] Finally, Plaintiffs argue that their decision not to

seek a preliminary injunction could be based on a number of factors not relevant to the

undue prejudice factor.[47]

The Court finds that the risk of undue prejudice and tactical disadvantage weighs

against a stay. The party seeking a stay must show that the non-moving party will not

suffer undue prejudice.[48] The parties are direct competitors; Halcyon and 321 Holdings

compete directly in the foam roller market, and Performance derives revenues from

royalties on the foam roller market.[49] Courts have applied a presumption of undue

prejudice when the parties are competitors,[50] and Plaintiffs have argued that they have

lost and will continue to lose market share to Sea Ties as long as the alleged infringement

continues. The loss of market share can be an irreparable harm not compensable by

money damages sufficient to support a finding of undue prejudice.[51] The Court does not

---

[43] *Id.*
[44] *Id.* at 24.
[45] *Id.* at 25.
[46] *Id.*
[47] Rec. Doc. No. 49, p. 28.
[48] *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011).
[49] Rec. Doc. 41-3, pp. 6–7.
[50] *ADA Sols.,* 826 F. Supp. 2d at 351.
[51] *Id.*

find Plaintiffs' failure to request a preliminary injunction germane to the propriety of a stay, but views it as a litigation strategy.[52] Finally, Plaintiffs' delay in suing can be attributed to its efforts to resolve this dispute without litigation and hesitancy to litigate for financial reasons. The first factor weighs in favor of denying the *Motion.*

### B.  Simplification of the Issues

Sea Ties claims that, regardless of whether Plaintiffs' patents survive reexamination, the record the PTO creates will inform this litigation.[53] According to Sea Ties, 91% of *ex parte* reexamination requests are granted, and only 20.7% of patents emerge from *ex parte* reexamination with "all claims confirmed."[54] Therefore, Sea Ties contends there is around an 80% chance "that Plaintiffs will lose their patents or otherwise lose their ability to claim patent infringement as a result of amending to survive invalidity."[55]

Sea Ties argues that the PTO granted the reexamination request in three weeks when it had three months to do so, which is suggestive of problems with Plaintiffs' patents.[56] Sea Ties also asserts that typical reexamination requests identify four to six prior art references, but the PTO in this case identified at least twelve.[57] Sea Ties claims that, while the median time for an *ex parte* reexamination is approximately 19.4 months, Plaintiffs can expedite that time frame by timely filing with the PTO and perhaps requesting expedited review.[58]

---

[52] *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-05669 NSR, 2014 WL 2854656, at *5 (S.D.N.Y. June 20, 2014).
[53] Rec. Doc. No. 36-1, p. 17.
[54] *Id*. at 18.
[55] *Id*.
[56] *Id*. at 19.
[57] *Id*.
[58] *Id*. at 20.

Finally, Sea Ties avers that courts have recognized other benefits to a stay:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise. 2. Many discovery problems relating to prior art can be alleviated by the PTO examination. 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed. 4. The outcome of the reexamination may encourage a settlement without the further use of the Court. 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation. 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination. 7. The cost will likely be reduced both for the parties and the Court.[59]

Plaintiffs assert that it is highly unlikely that all of the claims in all of the patents will be canceled in the reexamination proceedings.[60] Plaintiffs contend that the PTO cancels all of the claims of a challenged patent in only 12.7% of cases.[61] Furthermore, Plaintiffs claim that Sea Ties has asserted invalidity of Plaintiffs' patents on grounds other than prior art references, and that the PTO will not consider those other grounds.[62] As such, argue Plaintiffs, the reexamination will not simplify all of the potential reasons for invalidity.

Plaintiffs also argue, convincingly, that even if the PTO invalidates all of Plaintiffs' patents, there are still 7 more causes of action.[63] The reexamination will not affect the two declaratory judgment requests as to the Sea Ties Parties' patents or the false advertising, unfair competition, tort, and LUTPA claims.

The Court finds that this factor also weighs in favor of denying a stay. First, the statistics the parties rely on suggest that one or more of the claims of Plaintiffs' patents may survive reexamination. Moy's Walker on Patents is instructive as to how claims affect

---

[59] *Id*. at 23 (quoting *Fisher Controls Co. v. Control Components, Inc*., 443 F. Supp. 581, 582 (S.D. Iowa 1977)).
[60] Rec. Doc. No. 49, p. 18.
[61] *Id*.
[62] *Id*. at 19.
[63] *Id*. at 20.

a patent's validity:

> [A] claim may be written in independent or, if the nature of the case admits, in dependent or multiple dependent form.

> [A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

> As these statements describe, there are two basic forms of claims in United States patent practice, independent and dependent. As the name implies, independent claims are free-standing. The scope of an independent claim can therefore be determined, at least in theory, by referring to that claim only and not to any other claims in the patent. Dependent claims, in contrast, incorporate the contents of a preceding claim by reference. The scope of a dependent claim cannot be ascertained without referring to the claim from which it depends.

> The practical impetus for independent and dependent claims is relatively easy to understand. As the applicant prosecutes his or her patent application before the PTO, he or she is inherently uncertain of the claim scope that will be appropriate once the patent issues. This is because potential infringers have not yet appeared, and also because additional prior art will almost certainly come to light after examination concludes. A broader claim therefore might be needed to encompass the infringer; conversely, a narrower claim might be all that will eventually avoid the art under sections 102 and 103. As a consequence, the patent applicant is motivated tactically to define the invention through a sequence of claims having varying scope. These claims will usually start with the broadest claim, which will be followed by later claims that introduce increasing limitations.

> Practitioners and the PTO have found it easier in practice to deal with the claims in these groups by having each narrower claim incorporate the contents of the next broadest claim by reference.

> […]

> The presentation of a claim in dependent form does not tie either its validity or infringement to the independent claim directly. Instead, use of dependent form is treated merely as a convention to display more plainly the manner in which the dependent and independent claims are related. Thus, for example, section 282 states that the presumption of validity attaches to each claim in a patent separately, regardless of whether the claim is in dependent or independent form, and that "dependent claims shall be

65708

presumed valid even though dependent on an invalid claim."

Therefore, the Court finds that Sea Ties' assertion that there is an 80% chance that the PTO will invalidate Plaintiffs' patents is misleading. Rather, the PTO invalidates or requests revisions to at least one claim in a given patent in around 80% of cases. But Plaintiffs only need one claim in one patent to survive reexamination if Sea Ties is found to have infringed on that claim. Plaintiffs' PTO statistics indicate that the PTO invalidates the entire patent in only 12.7% of cases and would have to do so for all of Plaintiffs' patents in order to eliminate the patent infringement causes of action in this case. It is unlikely that the PTO reexamination will dispose with all the patent claims.

More importantly, Plaintiffs allege seven causes of action that are not dependent on the validity of its patents. Regardless of the PTO's decision, the Court must consider those causes of action. Tellingly, Sea Ties did not identify a single case where a court ordered a stay when multiple non-patent causes of action were also pending. While the reexamination may simplify some of the issues, it will not simplify them all, which weighs in favor of denying the *Motion*.[64]

## C.  Timing of the Motion

This case is in its infancy; the parties exchanged initial disclosures on January 21, 2021. However, where, as here, the other factors weigh in favor of denying the *Motion to Stay*, the early stage of the case will not tip the scale in favor of the stay.[65] As one court stated:

> Although the advanced nature of a case approaching trial may weigh
> heavily against granting a stay, the opposite inference—that a suit in the

---

[64] *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 352 (D. Mass. 2011); *Nippon Steel & Sumito Metal Corp. v. POSCO*, No. CIV.A. 12-2429 DMC, 2013 WL 1867042, at *9 (D.N.J. May 2, 2013).
[65] *ADA Sols.*, 826 F. Supp. 2d at 352.

early stages should weigh heavily in favor of a stay—is not true. As a case progresses through the stages of litigation, the grant of a stay generally becomes more costly to the parties and to the court. Yet, just as the absence of a negative inference does not create a positive inference, so also the lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay; the lower cost simply indicates the best time to grant a stay is in the early stages of litigation.[66]

The Court finds this reasoning persuasive.

## IV.    CONCLUSION

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."[67] The Court's resolution of this *Motion* depends on balancing uncertainties. Both parties warn of the hazards that *could* befall them if the Court does not rule in their favor. After filtering out the conjecture, one of the few certainties in this case is that, regardless of the PTO's decision, this case will continue because of Plaintiffs' seven non-patent causes of action—for which there is no basis for a stay. In light of these causes of action and the risk of undue prejudice to Plaintiffs, the Court denies Sea Ties' *Motion to Stay.*

Sea Ties argues that the median time for PTO examination is 19.4 months,[68] and there appears to be a likelihood that Plaintiffs' patents will be affected in some way by the reexamination. In light of this timeline, the parties are encouraged to do what they can to expedite the reexamination. In the meantime, the Court is optimistic that with cooperation and common sense, the risk of duplicative and unnecessary expense and efforts can be minimized.

---

[66] *Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc*., No. 3:09CV791, 2010 WL 1946262, at *3 (E.D. Va. May 10, 2010).
[67] *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed.Cir.1988) (internal citations omitted).
[68] Rec. Doc. No. 36-1, p. 20.

For the foregoing reason, Sea Ties' *Motion to Stay*[69] is denied.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>May 27, 2021</u>.


**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[69] Rec. Doc. No. 36.

65708