UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PERFORMANCE SOLUTIONS, LLC; 321 HOLDINGS, LLC; HALCYON BRAND SERVICES, INC., | ) ) ) | NO. 20-cv-00797-SDD-RLB |
| | ) | Hon. Shelly D. Dick |
| PLAINTIFFS, | ) ) | Mag. Richard L. Bourgeois, Jr. |
| VERSUS | ) ) | |
| SEA TIES LLC D/B/A RUMBLEROLLER, | ) ) | |
| DEFENDANT. | ) ) | |
| _____ | ) | |

**PLAINTIFFS' JOINT OPENING CLAIM CONSTRUCTION BRIEF IN SUPPORT OF
*UNDISPUTED* CONSTRUCTIONS OF SEA TIES' PATENTS**

**TABLE OF CONTENTS**

I.    CLAIM TERMS FOR CONSTRUCTION ................................................................. 3

    A.    Sea Ties' Patents ........................................................................................... 3

        1.    "each massage projection"/"each of the plurality of massage projections" ............................................................. 3

        2.    "radiused peripheral edge" .............................................................. 5

        3.    "aligned circumferentially" ............................................................ 8

        4.    "axially spaced apart bands" ........................................................ 10

        5.    "arcuate apex" ................................................................................ 11

        6.    "side walls" .................................................................................... 13

        7.    "base" .............................................................................................. 14

II.    CONCLUSION .......................................................................................................... 15

**Cases**

*Constant Compliance, Inc. v. Emerson Process Mgmt. Power & Water Solutions, Inc.,* 598 F.
   Supp. 2d 842, 845 (N.D. Ill. 2009) ....................................................................................... 2

*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) .......................................... 4

*Klaustech, Inc. v. Google, Inc., C 10-05899 JSW*, 2016 WL 2957044 .......................................... 2

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ............................................. 5

*Wang Labs., Inc. v. AOL, Inc.*, 197 F.3d 1377, 1384 (Fed. Cir. 1999) ........................................... 4

*Winvic Sales, Inc. v. ValueVision Media Inc.*, No. 09-cv-7807, 2011 WL 4901315 ...................... 2

Pursuant to N.D. Cal. Local Patent Rule 4-5 and the Court's Scheduling Order (Rec. Doc. 83), Plaintiffs Performance Solutions, LLC ("Performance Solutions"), 321 Holdings, LLC ("321 Holdings"), and Halcyon Brand Services, Inc. ("Halcyon") (collectively "Plaintiffs") hereby jointly submit their Opening Claim Construction Brief in support of Plaintiffs' *undisputed* constructions of Sea Ties' patents, U.S. Patent Nos. 10,307,325 ("the '325 Patent") and 9,668,933 ("the '933 Patent") ("the Sea Ties Patents"). Plaintiff Performance Solutions has concurrently submitted its Opening Claim Construction Brief in support of its proposed constructions on the disputed terms in the Performance Solutions' Patents: U.S. Patent Nos. 9,539,167 ("the '167 Patent"), 9,656,112 ("the '112 Patent"), 10,278,890 ("the '890 Patent"), and 10,695,260 ("the '260 Patent") ("the Performance Solutions Patents").

Prior to and at the parties' November 11, 2021 meet and confer to discuss the constructions of each side's patents, Sea Ties adamantly stated that it "is not going to engage Plaintiffs with respect to the '325 Patent given that it is owned and enforced by a non-party to this case."[1] *See* Declaration of Ashe Puri ("Puri Decl."), **Exhibit A**. Sea Ties' refusal to cooperate in this case on the Sea Ties' Patents was done knowing full well that the Court had issued multiple orders finding that Plaintiffs can proceed with their claims against Sea Ties relating to the Sea Ties' Patents. Rec. Nos. 59 and 75. Despite both Court orders, Sea Ties has nevertheless filed two additional motions (a Motion to Dismiss this lawsuit and a Renewed Motion to Stay this Case) asserting (again) that this Court has no jurisdiction to hear any claims involving the Sea Ties' Patents. Sea Ties also

---

[1] Although the '933 Patent was not addressed in Sea Ties' email, Plaintiffs have requested a construction of certain terms in the '933 Patent. Claim construction on the '933 Patent would be helpful to the Court and/or jury in order to understand why Sea Ties' takedown of the 321 Strong rollers from Amazon in 2018 were improper. Sea Ties' misconduct, including with respect to the Amazon takedown, is subject of Plaintiffs' tort claims in this action. The same terms proposed for construction by Plaintiffs appear in both the '933 and '325 Patents.

1

made a renewed request for a discovery stay pending the Court's decision on both motions. On November 2, 2021, this Court denied Sea Ties' renewed request for a discovery stay. Rec. No. 82.

The law unequivocally states that a party who refuses to engage in the claim construction process is deemed to have waived its rights to object to any constructions that it refused to contest. *See Klaustech, Inc. v. Google, Inc., C 10-05899 JSW*, 2016 WL 2957044, at *7 (N.D. Cal. May 23, 2016), *aff'd sub nom. KlausTech, Inc. v. Google LLC*, 792 Fed.Appx. 954 (Fed. Cir.2020) (Defendant's failure to contest Plaintiff's proposed construction during claim construction proceedings constituted a waiver of Defendant's argument); *Winvic Sales, Inc. v. ValueVision Media Inc.*, No. 09-cv-7807, 2011 WL 4901315, at *1 n.1 (N.D. Ill. Oct. 14, 2011) ("Because Winvic does not offer a construction of "upper portion" or "lower portion," the Court deems it to have waived its objections to ShopNBC's construction"); *Constant Compliance, Inc. v. Emerson Process Mgmt. Power & Water Solutions, Inc.,*598 F. Supp. 2d 842, 845 (N.D. Ill. 2009) (failure to provide proposed claim constructions by the deadline set forth in the Court's Scheduling Order constituted a waiver). In this case, Sea Ties had no basis for refusing to engage in the claim construction process on the Sea Ties' Patents, particularly in light of the Court's rulings that Plaintiffs may proceed with their claims against Sea Ties on the Sea Ties' Patents.  Sea Ties' refusal to engage in claim construction should therefore be deemed a waiver of its rights to object to Plaintiffs' proposed constructions or to propose any alternative constructions.

Accordingly, Performance Solutions respectfully requests that this Court adopt Plaintiffs' *undisputed* construction for each of the below claim terms identified by Plaintiffs for construction from U.S. Patent Nos. 9,688,993 and 10,307,325.  The Court need not consider any additional briefing or argument regarding those terms.  Should this Court, however, wish to consider Plaintiffs' arguments in support of their proposed constructions for the Sea Ties' Patents, the arguments are set forth below.

## I. CLAIM TERMS FOR CONSTRUCTION[2]

### A. Sea Ties' Patents

#### 1. "each massage projection"/"each of the plurality of massage projections"

| Claim Term | Location in Patent(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "each massage projection" <br><br> "each of the plurality of massage projections" | '933 : Claim 1 <br> '325 : Claims 1, 2, 3, 9, 10, and 16 | Each massage projection on the massage roller | N/A |

Independent Claim 1 of the '933 Patent and independent Claims 1, 9 and 16 of the '325 Patent require the massage roller to contain a plurality of massage projections with <u>each</u> massage projection containing specific recited features (i.e., a base, a radiused peripheral edge, an arcuate apex, etc.). Plaintiffs' proposed construction of the term "each massage projection" and "each of the plurality of massage projections" to mean each massage projection on the massage roller is based on a plain reading of these claims that refer to each massage projection on the roller.

Plaintiffs' proposed construction is consistent with the specification of the Sea Ties' Patents. For example, Figures 1-3 of the '933 and '325 Patents show each massage projection on the massage roller as identical. Figures 4-7 show the features on one massage projection as representative of all projections on the massage roller. *See* '325 Patent, Col. 2, lines 30-37 ("Fig. 4 is a top view of one of the projections on the surface of the roller shown in Fib. 1 … Fig 7 is a perspective view of a *representative* projection on the roller partly cut-away.") (emphasis added).

Plaintiffs' proposed construction is also consistent with the prosecution history of the Sea Ties' Patents. For example, during prosecution of the '933 Patent, the inventor distinguished his

---

[2] Plaintiffs incorporate by reference the Legal Background section set forth in Performance Solutions' Opening Claim Construction Brief on Construction of Performance Solutions' Patents

3

invention from the prior art on the basis that his claims are directed to each massage projection on the massage roller. According to the inventor: "Applicants note that claim [sic] 1 has been amended to recite that <u>each massage projection</u>, in addition to comprising an 'arcuate apex' also comprises 'a radiused peripheral edge extending around the base of each massage projections.' FIGS. 4 and 6 of the application at hand, provided below for the Examiner's reference, depict an <u>exemplary embodiment [of] a massage projection</u> comprising a radiused peripheral edge (32) extending around the base of the massage projection. The radiused peripheral edge extending around the base of **each** massage projections provides added structural strength for the massage projections assist in the deep tissue access with the massage roller projections." Declaration of Ashe Puri ("Puri Decl."), at **Exhibit B** (emphasis added).

The inventor's statements made during prosecution of the '933 Patent apply with equal force to the '325 Patent since those statements involve the same claim term from a related patent. Under Federal Circuit precedent, "when multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999); *see also Wang Labs., Inc. v. AOL, Inc.*, 197 F.3d 1377, 1384 (Fed. Cir. 1999). In this case, the '325 Patent is a continuation-in-part of the '933 patent.

Since the term "each massage projection" in dependent claims 2 and 3 of the '325 Patent refer back to this term in Claim 1 of the '325 Patent, the Court should apply the same construction adopted in Claim 1. With respect to dependent claims 10 and 16 of the '325 Patent, the claims also recites "each massage projection" on each band of the roller. Therefore, Plaintiffs' proposed construction should also be adopted for each of these dependent claims.

4

2. **"radiused peripheral edge"**

| Claim Term | Location in Patent(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "radiused peripheral edge" | '933 : Claim 1 '325 : Claims 1 and 10 | The claim is indefinite. | N/A |

Under the Supreme Court's precedent in *Nautilus*, a patent is indefinite if its claims "read in light of the specification … and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The claim term "radiused peripheral edge" is indefinite because one of skill in the art would be unable to determine what "radiused peripheral edge" does or does not cover. The indefiniteness of this is discussed in the accompanying report of Performance Solutions' expert Dr. Chris Scott, Ph.D at **Exhibit 1** at ¶ 87.

The specifications of the '933 and '325 patents state: "The bottom edges of the integral sidewalls and end walls smoothly transition into the roller body **14** at radiused peripheral edge **32** extending around the base 29 of each projection." ['933 at 3:42-46; '325 at 4:26-30]. Figures 4 and 6 show annotations "**32**" indicating the location of the radiused peripheral edge. From the description and the drawings one of skill would understand that the specification refers to the edge having a radius of curvature beginning where the walls transition into the roller body.

The file history of the '933 patent also addresses the term "radiused peripheral edge." In the "Response to Office Action Dated January 17, 2014" (Puri Decl. at **Exhibit C**), the Applicant stated that "… Anderson does not disclose a massage projection having 'a radiused peripheral edge extending *around the base* of each massage projection.' Instead, what the Examiner has referenced as a radius peripheral edge does not extend *around the base* of the texture feature, but rather is only on two opposing sides of the four sides of the texture feature." [p. 9, emphasis in the original]. The Applicant further provided an annotated figure from Anderson and stated "… two edges of

5

each texture feature disclosed by Anderson comprise a hard angle rather than a radiused edge. Thus, Anderson does not disclose 'a radiused peripheral edge extending around the base of each massage projection.'" [p. 9-10]. In the "Patent Owner's Appeal Brief Under 37 CFR § 41.37" (Puri Decl. at **Exhibit D**), the Applicant further stated that the term "a radiused peripheral edge extending around the base of each projection" would be interpreted to one of ordinary skill in the art as "a single, continuous radiused peripheral edge because 'extending around' cannot be interpreted as being positioned on various sides of the base." [p. 12]. Applicant further stated that "… neither Anderson nor Yu teach or suggest a radiused peripheral edge extending *around the base* of each massage projection…" [p. 11, emphasis in the original].

As a practical matter, every edge around the base of the Anderson projections will have a radius of curvature where the wall transitions into the roller body. Scott Decl. (**Exhibit 1**) at ¶ 91. The radius of curvature may be small, but a radius of curvature will be present. *Id.* at ¶ 91. This is due to the nature of the fabrication process. Reproduced below is the figure that appeared in the "Response to Office Action Dated January 17, 2014" on page 10. This shows Anderson Figs. 5 and 6 with a gray arrow added by the Applicant and two red arrows that were added. The projection edge indicated by the red arrows in perspective (Fig, 5) and in cross-section (Fig. 6) clearly has a radius of curvature as drawn where the wall transitions into the roller body. With regard to the projection edge indicated by the small black arrow (located between the red arrows) the Applicant asserted that "As indicated by the [black] arrow in FIG. 5, two edges of each texture feature disclosed by Anderson comprise a hard angle rather than a radiused edge." [Puri Decl. at **Exhibit C**, at p. 9-10].

6



Anderson Figs. 5 and 6 as originally annotated by the Applicant on one projection edge (black arrow) and further annotated on another edge (red arrows).

One of skill would recognize that in typical manufacturing practice the edge indicated by the Applicant's gray arrow would in fact have a radius of curvature where the walls of the projections transition into the roller body. Scott Decl. (**Exhibit 1**) at ¶ 93. Based upon the drawing the radius of curvature of the edge at the gray arrow would be smaller than the radius of curvature of the edge at the red arrow. However, there would still be a radius of curvature due to the materials and manufacturing methods taught by Anderson. *Id.* Anderson teaches that "The textured tube member can be fabricated from a rigid material (e.g., metal or plastic) or from an elastomeric material." [Anderson 0010]. Puri Decl., **Exhibit E** (Anderson). One of skill would recognize that fabrication methods for the textured tube member would not generate edges where the walls transition into the roller body having perfectly sharp angles; instead the edges would have at least a small radius of curvature. For example, Anderson teaches fabrication where "the elastomeric tube would be molded or extruded" [Anderson 0035]. Molding or extrusion of the elastomeric tube with a textured outer surface would generate edges with at least a small radius of curvature. In practice the edges of the projections fabricated by molds (in the case of molding) or dies (in the case of extrusion) have at least a small radius of curvature due to the process by which the elastomeric material forms and solidifies against the mold or die and then subsequently cures when removed from the mold or die. The fabrication process cannot fully control this naturally occurring

7

result therefore making the presence of small radiused edges not only commonplace, but unavoidable.

To further add to the confusion over the meaning of this term, Figure 4 of the Sea Ties' Patents clearly shows an interruption at each corner of the projection marked as roller body 14. Thus, it seems apparent that the inventor may not have had any support for the argument made to the USPTO that the radiused peripheral edge extends continuously around the base of the projection.

Therefore, one of skill would be unable to determine what "radiused peripheral edge" covers or does not cover since one of skill cannot determine the dividing line between the Applicant's asserted "hard angle rather than a radiused edge."

### 3. "aligned circumferentially"

| Claim Term | Location in Patent(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "aligned circumferentially" | '933 : Claim 1<br>'325 : Claim 1, 10, and 16 | The claim is indefinite.<br><br>Alternatively, each massage projection in the band must be aligned along the circumference of the massage roller | N/A |

Independent Claim 1 of the '933 Patent and independent Claims 1 and 16 of the '325 Patents recite that the massage roller contains axially spaced-apart bands where each band comprises a plurality of massage projections that are aligned circumferentially about the cylindrical body. The specifications of both patents provide no guidance about how the projections must be aligned to fall within the scope of the patent claims. In other words, the specification does not specify whether "aligned" means left aligned, center aligned, right aligned (or any combination thereof), or whether one or more projections can extend across multiple bands and still meet the limitation "aligned." In this case, the Sea Ties' Parties accused the 321 Strong Medium and Extra Firm rollers of infringement. The projections in both rollers span across multiple bands, as shown

8

in the following computer-generated images:

 

For these reasons, the term "aligned circumferentially" should be found indefinite because one of skill would be unable to determine what the term "aligned circumferentially" covered or did not cover. Plaintiffs' alternative construction seeks to provide some clarity to the ambiguity of this term by which Figure 1 shows each projection aligned in a band along the circumference of the roller:



Thus, to the extent figure 1 sheds any light on the meaning of this term, Plaintiffs alternatively request a construction that each massage projection in the band must be aligned along the circumference of the massage roller. For reference, in Fig. 1 of the '933 and '325 Patents are 20 bands of projections aligned circumferentially around the cylindrical body which are axially spaced apart along the long axis of the device.

4.      "axially spaced apart bands"

| Claim Term | Location in Patent(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "axially-spaced apart bands" | '933 : Claim 1<br>'325 : Claims 1, 10, 11, and 16 | The claim is indefinite.<br><br>Alternatively, a band with projections that are separated from the next band by an intermediate body space, whereby each band is characterized by a uniform axial length | N/A |

Independent Claim 1 of the '933 Patent and independent Claims 1 and 16 of the '325 Patents recite that the massage roller contains "axially-spaced apart bands" with projections that are "aligned circumferentially" on each band. The specifications of the '933 and '325 Patents provide no guidance on the meaning of the "axially-spaced apart bands." Since this term is also inextricably linked to the projections being "aligned circumferentially," for the reasons stated above, it is impossible to arrive at a construction of this term. For these reasons, the claim term "axially spaced apart bands" should be found indefinite.

Plaintiffs' alternative construction seeks to provide some clarity to the term. In Figure 1 of the Sea Ties' Patents, a band is shown with projections that are separated from the next band by an intermediate body space where each band is characterized by a uniform axial length. Thus, to the extent Figure 1 sheds any light on the meaning of the term, Plaintiffs would alternatively request that this Court adopt a construction requiring each massage projection in the band to be aligned along the circumference of the massage roller.

10

5. **"arcuate apex"**

| Claim Term | Location in Patent(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "arcuate apex" | '933 : Claim 1<br>'325 : Claims 2 and 9 | The claim is indefinite.<br><br>Alternatively, two opposing side walls sloping together to form an arc or bow by which the opposing side walls reach a highest point without a flat top separating the opposing side walls or any rounded sides on the opposing side walls | N/A |

Claim 1 of the '933 Patent and Claims 2 and 9 of the '325 patent recite a "plurality of massage projections" having "an arcuate apex opposite the base, and two opposing side walls sloping closer together from the base toward the arcuate apex." While the specification of the patents discloses a "generously radiused arcuate apex," this disclosure is insufficient to inform a person of skill in the art what the range of possible radii are. In other words, while the term "arcuate apex" appears to require that the claimed projections have curved apexes, there is no guidance on specifically how flat, or how pointy, the apex of the claimed projections may be to fall within the meaning of an "arcuate apex." The figures of the patents only muddy the water further. For example, Figures 5 and 6 of the '325 patent are reproduced below:



FIG. 5

In contrast to figure above, Sea Ties has accused two products of 321 Strong products of infringement where the projections have a considerably more flat top and not an arcuate apex:

11

 

The figures in the Sea Ties' Patents purport to show examples of the claimed "massage projections." The specification describes the figures as follows: "The details of the individual projections are best seen in Figs 4 to 7. Each projection 20 has opposite side walls 24, 24A, which converge upwardly at an angle of approximately 15° to a generously radiused *arcuate apex* 25. The opposite end walls 26 and 26A diverge downwardly at an angle of approximately 60°. A slight radius extends along the upper edges 30, 30A of end walls 26 and 26A where the end walls transition into the side walls and also to the apex 25. ('325 Patent, col. 4, ln. 19-26). Viewed from the side (Fig. 5), the apex of the projection appears to extend from the side walls in a smooth curve of consistent radius. With no guidance from claims, the specifications, or the figures about the radius of curvature, the claims containing the term" arcuate apex" should be found indefinite.

Plaintiffs' alternative construction seeks to provide some clarity to the term "arcuate apex." Plaintiffs' proposed alternative construction defines the "arcuate apex" in the manner described in Fig. 5 (above). In other words, Plaintiffs' proposed alternative construction preserves the specification's requirement that the apex be "generously" curved. Plaintiffs' proposed alternative construction is also consistent with the dictionary definitions of "arcuate" that existed at the time of the invention. For example, Webster's Dictionary defines arcuate to mean "curved like a bow." (**Exhibit F**). Oxford Dictionary similarly defines arcuate as "shaped like a bow; a bow." (**Exhibit G**). Accordingly, to the extent this claim term is not found to be indefinite, Plaintiffs' alternative proposed construction should be adopted.

12

      **6.**      **"side walls"**

| Claim Term | Location in Patent(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "side walls" | '933 : Claim 1 '325 : Claims 2 and 9 | The wall on the side of each projection extending distally at the same length from the base and angled at a first or same angle until transitioning at the upper edges of the projection towards the arcuate apex | N/A |

As shown in Figure 5 of the '325 patent, the claimed projections of the patent are symmetrical when viewed from the side:



FIG. 5

This symmetry is confirmed by the specification of the patent, which describes the side walls (24 and 24A, above) as opposing each other and sloping upward toward the arcuate apex (25, above) *at the same angle*: "Each projection 20 has opposite side walls 24, 24A, which converge upwardly at an angle of approximately 15° to a generously radiused *arcuate apex* 25." ('325 Patent, col. 4, ln. 19-26). From the depiction of the side view of the claimed projection in Figure 5 (above), it is evident that side walls (24 and 24A) are intended to be the same length and have the same (but opposite) angle of convergence relative to the surface of the cylindrical body. Moreover, while the patents each contain numerous depictions of various shapes of potential projections, *none* of these show a projection that, when viewed from the side as in Figure 5, above, would be non-symmetrical. Accordingly, Plaintiffs' proposed construction of the term "side walls", which is consistent with the specification and the figures of the patents, should be adopted.

13

7. "base"

| Claim Term | Location in Patent(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| "base" | '933 : Claim 1<br>'325 : Claims 1, 2, 9, 10, and 16 | The claim is indefinite.<br><br>Alternatively, the point of demarcation where the proximal end of the side walls stop having a first or same angle and terminating equidistant from the longitudinal axis of the roller body | N/A |

The term "base" in the '933 and '325 patents is indefinite because the patents provide no indication of precisely where on each of the claimed projections the base is located. Instead, the patent specifications describe projections having, a base, side walls, end walls, and a radiused peripheral edge. But when each of these elements is identified on the figures of the patents, the base is conspicuously excluded. For example, Figures 4, 5, and 6 of the '933 patent, reproduced below, show views of one of the claimed projections from various angles. The figures show the side walls (24 and 24A), the radiused peripheral edge (32), the end walls (26 and 26A), the arcuate apex (25), and the exterior body of the roller (14). But these figures do not show where the "base" is located. ('933 Patent, col. 3, ln. 35-46; *see also* '325 Patent, col. 4, ln. 19-30).



Indeed, the "base" appears only in Figure 9 of the patent, reproduced below:

14



In this figure, according to the specification, the "base" is identified by the number 29. But in the Figure, number 29 points precisely to what appears to be the line of convergence of the radiused peripheral edge and the side wall of the projection. According to the specification: "The bottom edges of the integral sidewalls and end walls smoothly transition into the roller body 14 at radiused peripheral edge 32 extending around the base 29 of each projection." ('933 Patent, col. 3, ln. 42-46; *see also* '325 Patent, col. 4, ln. 26-30). The figures and the description in the specification beg the question of whether the "base" refers to the interface between the radiused peripheral edge and the side (or end) walls, or whether it also includes something more. Because a person of skill in the art would not be able to ascertain the intended scope of the term, it should be found to be indefinite.

To the extent, however, that this Court does not find the term "base" to be indefinite, Plaintiffs' proposed construction thus reflects the location of the base as described by Figure 9 and the corresponding passage in the specification, shown above. In other words, Plaintiffs' proposed construction makes clear that the "base" of the projection is the point of demarcation where the proximal end of the side walls stop having a first or same angle and terminating equidistant from the longitudinal axis of the roller body.

## II.   CONCLUSION

For the reasons set forth above in connection with each of the disputed claim terms, Plaintiffs respectfully request that this Court construe the disputed terms in accordance with Plaintiffs' proposed constructions.

15

Respectfully Submitted

Dated: February 9, 2022　　　　　　　TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

/s/ Harry J. Phillips

Harry J. Phillips, Jr., Bar # 2047
450 Laurel Street, 8th Floor (70801)
P.O. Box. 2471
Baton Rouge, LA 70821-2471
Tel: 225.387.3221
Fax: 225.346.8049

Email: skip.phillips@taylorporter.com

Attorneys for Plaintiffs Performance Solutions LLC; 321 Holdings, LLC; and Halcyon Brand Services, Inc.

MAYNARD COOPER & GALE LLP

/s/ Ashe Puri
Ashe P. Puri (*Admitted Pro Hac Vice*)
Maynard Cooper & Gale, LLP
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 596-4344
Email: apuri@maynardcooper.com

Sasha G. Rao (*Admitted Pro Hac Vice*)
Brandon H. Story (*Admitted Pro Hac Vice*)
Maynard Cooper & Gale, LLP
Two Embarcadero Center, Suite 1450
San Francisco, California 94111
Telephone: (415) 646-4700
Email: srao@maynardcooper.com
Email: bstroy@maynardcooper.com

Attorneys for Plaintiff PERFORMANCE SOLUTIONS, LLC

RODIER & RODIER

/s/ Brian Rodier
BRIAN M. RODIER *(Admitted Pro Hac Vice)*
RODIER & RODIER

16

400 N. Federal Hwy,
Hallandale, FL 33009-3437
Telephone:  (954) 455-9300
Facsimile:  (954) 457-0499
bmrodier@rodierlegal.com

Attorneys for Plaintiffs 321 HOLDINGS, LLC,
HALCYON BRAND SERVICES, INC.

17